IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JONATHAN DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-278-M-BN |
| | § | |
| CEDAR HILL POLICE DEPARTMENT, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jonathan Davis brings this *pro se* civil rights action under 42 U.S.C. §
1983 against the City of Cedar Hill, its police department, its police chief, and
individual police officers. *See* Dkt. No. 3. This action has been referred to the
undersigned United States magistrate judge for pretrial management under 28 U.S.C.
§ 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn.

The Court has granted Davis leave to proceed *in forma pauperis* ("IFP"), *see* Dkt.
No. 6, and issued a screening questionnaire, *see* Dkt. No. 11, to which Davis has
submitted a 163-page verified response, *see* Dkt. Nos. 12, 13, 14, & 15. The undersigned
enters these findings of fact, conclusions of law, and recommendation that the Court
should dismiss the complaint (as amended by the verified questionnaire responses)
without prejudice to Davis filing an amended complaint.

**Applicable Background**

Davis's allegations that his federal constitutional rights – as protected by the

First, Second, Fourth, Eighth, and Fourteenth Amendments – have been violated by the defendants are based on events from late 2014 through 2015 and include claims that officers retaliated against him after he complained of harassment, that he was falsely arrested, and that officers improperly obtained search warrants related to him. *See, e.g.,* Dkt. No. 12 at 4-5 (providing a chronology of the alleged facts underlying his claims); Dkt. No. 13 at 11-17 (attaching a complaint against two Cedar Hill police officers filed by Davis related to a January 12, 2015 traffic stop and search); Dkt. No. 14 at 50 (attaching a letter from Cedar Hill police chief informing Davis that the department's investigation of two officers against whom Davis filed complaints resulted in a recommendation that both officers "be classified as 'exonerated'").

Davis's initial factual allegations center on Officer Foley, beginning with an allegation that, on January 12, 2015, Officer Foley, at the direction of Detective Woodall, staked out Davis's home, followed Davis, threw Davis in jail, and stole electronics from Davis. *See* Dkt. No. 12 at 4.

And, based on documents that Davis has included in his verified questionnaire responses, it does appear that Davis was investigated for forgery and that Cedar Hill police obtained a warrant to search two iPhones associated with Davis. *See id.* at 16-29. The affidavit in support of that warrant provides that the phones "were taken as evidence from Jonathan Edward Davis after he was arrested on 01-12-2015 for Possession of Drug Paraphernalia and Unlawful Carrying Weapons." *Id.* at 21. That affidavit further relates that Davis was arrested by the Cedar Hill Police Department for forgery of financial instruments on January 29, 2014. *See id.* And, as to the January

-2-

12, 2015 traffic stop, the affidavit sets out the following details:

On 01-12-2015 at approximately 2043 hours, Officer N. Foley#229, observed a vehicle traveling south in the 100 block of S Main St, Cedar Hill, Dallas County TX with Texas tag 8BM displayed. The vehicle then failed to come to a complete stop at the stop sign of S Main St at Cooper St. The vehicle also failed to signal its left turn as it turned onto Cooper St.

Officer Foley initiated a traffic stop on the vehicle for the above violations. Upon approach of the passenger side of the violator vehicle, the driver rolled his window down and Officer Foley immediately smelled an odor of burnt marijuana coming from the vehicle. The driver identified himself as Jonathan Davis b/m 9-6-90. Officer Foley explained the reason for the stop and he apologized. Suspected Person – Davis advised he did not have proof of financial responsibility. Officer Foley told him there was a distinct odor coming from the car and Davis said the smell coming from his car was probably from his friends who were smoking marijuana earlier. Officer Foley asked him if he had any knives, guns or marijuana in his vehicle and he said no.

Officer Foley had Davis exit the vehicle to conduct a probable cause search of his vehicle for marijuana. Officer Foley first found a large knife in his driver door. Officer Foley then detained Davis in handcuffs and placed him in the back of the squad car. Officer Foley later measured the knife which showed the blade length was 10.5 inches (illegal knife). Officer Foley looked between the driver seat and center console and observed what appeared to be a small cigar. Inside the cigar was a green leafy substance that Officer Foley knew to be marijuana. A loaded .38 Ross revolver was found in the glove compartment. Davis had two weapons in his vehicle (one illegal knife and a handgun) while committing a violation of the Health and Safety Code.

Suspected Person – Davis was placed under arrest. Officer Foley went to get his phones out of the car so they could be placed in his property with him at the jail. Without manipulating anything on one of his phones, a text message he received was showing. It was from an unknown person asking him (Davis) if he " ... got any hydros." Knowing from experience that hydro is slang for a type of marijuana, this message possibly indicated that Davis is selling marijuana. Davis's two phones and tablet were seized from the vehicle for further investigation. Davis was transported to DeSoto Jail where he was booked in under Cedar Hill PD citation# 147889 for Possession of Drug Paraphernalia and FMFR. He was additionally charged with Unlawful Carrying Weapon (M-1513661) for the gun. His vehicle was impounded at the scene by 24 HR Wrecker. All contraband and property seized were later placed into property at

Cedar Hill PD.

*Id.* at 21-22. The related search warrant was signed by a Dallas County magistrate on January 18, 2015. *See id.* at 24.

Possession-of-drug-paraphernalia and failure-to-maintain-financial-responsibility charges, brought in municipal court in Cedar Hill, were dismissed. *See* Dkt. No. 13 at 26-29. But it is unclear based on the documentation that Davis has provided whether those charges were dismissed after he paid a fine. *See id.* And prosecutors dismissed other, unspecified state charges after Davis prevailed on a suppression motion in November 2015. *See* Dkt. No. 13 at 30 ("On November 11, 2015 a suppression hearing was conducted before this Court at which time evidence, to wit: testimony of Cedar Hill Police Department Officer N. Foley, badge # 229 was presented. All evidence which was obtained subsequent to the traffic stop was ruled inadmissible in a trial for this offense by Judge Frizell.").

Davis further alleges that a SWAT team raided his home on May 1, 2015. *See* Dkt. No. 12 at 5. Related to this allegation, documents that Davis includes in his verified questionnaire responses reflect a search warrant for the home, signed by a Cedar Hill municipal judge on April 30, 2015, and a supporting affidavit setting out facts to support a belief that there was drug activity at the home. *See* Dkt. No. 13 at 35-50; Dkt. No. 14 at 1-18.

## Legal Standards

A district court is required to screen a civil action filed *in forma pauperis* and may summarily dismiss that action if it "fails to state a claim on which relief may be

-4-

granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *cf. Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (verified responses to interrogatories issued to "[t]o aid in the determination of whether an IFP complaint is frivolous," "become part of the plaintiff's pleadings" (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996))).

Dismissal for failure to state a claim "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam); emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. Indeed, to survive dismissal under the framework of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that he contends entitle him to relief. *Johnson*, 135 S. Ct. at 347 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)).

The rationale that factual plausibility (as opposed to legal labeling) controls the failure-to-state-a-claim analysis has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538,

543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *see United States v. Ayika*, 554 F. App'x 302, 308 (5th Cir. 2014) (per curiam) (a court has a "duty to construe *pro se* [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney"); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

In conducting the failure-to-state-a-claim analysis, "it is clearly proper ... to take judicial notice of matters of public record," *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008). And, although a court generally cannot otherwise look beyond the pleadings to determine whether claims should be dismissed, the pleadings here include the verified response to the Court's screening questionnaire [Dkt. Nos. 12, 13, 14, & 15], which is now "part of [Davis's] pleadings," *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)). Through the use of questionnaires – approved by the United States Court of Appeals for the Fifth Circuit "to aid in the determination of whether an IFP complaint is frivolous" – a court is able to "'focus[] precisely on [the] factual allegations, puncturing the conclusion balloon in which they may at first be lodged.'" *Id.* (quoting *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985)). Verified responses to questionnaires also promote efficient screening of claims by allowing a plaintiff leave to amend his allegations to plead his best case.

-6-

As to pleading a plaintiff's best case, the Fifth Circuit recently observed that "[o]rdinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.' ... Granting leave to amend, however, is not required if the plaintiff has already pleaded her 'best case.' A plaintiff has pleaded her best case after she is apprised of the insufficiency of her complaint[ – such as the facts, as alleged, are conclusory. And a] plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court." *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009); citations and internal question marks omitted); *cf. Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

## Analysis

I.   <u>Municipal Liability</u>

It is clearly established that "[a] municipality" – like the City of Cedar Hill, named by Davis as a defendant – "and/or its policymakers may be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell*

*v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted).

To assert liability under *Monell*, Davis must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see also id.* ("A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" (quoting *Piotrowski*, 237 F.3d at 578)).

Davis fails to directly allege that his rights were violated under an official policy of the City of Cedar Hill. But that does not end the analysis here since Davis also alleges that "Chief Rhodes sent a letter to me dated 3/3/15 that fully exonerated Officer Foley and John Brandon Woodall of any violation of the law or department policy." Dkt. No. 12 at 4. This allegation could be construed as asserting that the "the City is liable because Chief [Rhodes] ratified the officers' conduct." *Peterson*, 588 F.3d at 849.

"[I]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). But the Fifth Circuit "has limited the theory of ratification to 'extreme factual situations,'" *id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)), such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back, *see id.* (citations omitted)). And the Fifth Circuit has "also explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability

on behalf of the municipality." *Id.* (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)).

Given these standards, the Court should not find that Davis has sufficiently alleged municipal liability based on a theory of ratification. Therefore, Davis has not alleged a plausible claim against the City itself.

## II.    Non-Jural Entities

Davis names as a defendant the Cedar Hill Police Department. But a plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. And it is established that the police departments of Texas municipalities are not jural entities subject to suit. *See, e.g., Combs v. City of Dallas*, 289 F. App'x 684, 686 (5th Cir. 2008) (per curiam) (affirming dismissal of "the DPD as a defendant because it is a servient political department that does not enjoy a separate and distinct legal existence from the City of Dallas," as the plaintiff failed to "show that the City of Dallas granted the DPD the capacity to sue or be sued as a separate and distinct entity" (citing *Darby*, 939 F.2d at 313)).

## III.    Individual Officers/Constitutional Claims

The undersigned pauses before examining the individual constitutional claims to observe an overall deficiency in Davis's complaint as amended by the verified

questionnaire responses – the amended complaint fails to sufficiently specify which particular, non-conclusory facts support each alleged constitutional harm. Factual specificity is required when pleading a case under Section 1983 because "the elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another." *Carey v. Piphus*, 435 U.S. 247, 264-65 (1978). "In other words, § 1983 liability does not turn on a one-shoe-fits-all proposition." *Silver v. D.C. Metro. Police Dep't*, 939 F. Supp. 2d 20, 22 (D.D.C. 2013).

### A.    First Amendment

Asked to specifically explain how each defendant violated his rights under the First Amendment, Davis offers several theories – including that their alleged harassment interfered with his right to peaceful assembly, that their allegedly turning away a complaint filed by him infringed on his freedom of speech, and that the police chief's commenting on a news story concerning Davis's complaints against the police infringed on Davis's right to freedom of the press. *See* Dkt. No. 14 at 47-48. But liberally construed, Davis has alleged, at best, a claim of First Amendment retaliation – that all law enforcement actions against him, as set out above, were motivated by his complaints against the police.

> To prevail on a § 1983 claim for First Amendment retaliation, [Davis] must show that "(1) he was engaged in constitutionally protected activity; (2) the defendant[s'] actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant[s'] adverse actions were substantially motivated by the constitutionally protected conduct."

*McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); footnote and original brackets omitted).

Further, to the extent that Davis claims that his prosecutions were in retaliation to his complaints, "retaliatory criminal prosecutions in violation of the First Amendment are actionable only if a plaintiff can also prove the common-law elements of malicious prosecution." *Keenan*, 290 F.3d at 260. But Davis has not stated a stand-alone claim of malicious prosecution under state law.

Alleging a First Amendment violation based on retaliation "requires some showing that the plaintiff's exercise of free speech has been curtailed." *McLin*, 866 F.3d at 696-97 (quoting *Keenan*, 290 F.3d at 259; citations omitted). Although, the chilling "effect on freedom of speech ... need not be great in order to be actionable," *Keenan*, 290 F.3d at 569 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)), a plaintiff must allege curtailment of his speech to state a plausible claim for retaliation under the First Amendment, *see, e.g.*, *McLin*, 866 F.3d at 697 ("The assertion that McLin suffered 'violations of his First Amendment rights' is a legal conclusion and is not entitled to an assumption of truth. McLin is left with an allegation of 'great personal damage,' which does not demonstrate that he reduced or changed his exercise of free speech in any way." (citations omitted)).

Like McLin, Davis only has alleged legal conclusions – that each defendant "individually [violated his rights under the First Amendment] based upon violations of the rights to freedom of speech, press, and religion." Dkt. No. 3 at 12. And, where Davis does offer facts to support his First Amendment allegations, those facts do not

show that the defendants' actions curtailed Davis's exercise of rights protected by the First Amendment. *Compare, e.g.*, Dkt. No. 14 at 47 (alleging that Officer Woodall "authorized the hunt and arrest of me on 1.12.2015 by [Officer] Foley ... [because h]e wanted to silence me so I would not be able to make the complaint the following morning"), *with, e.g.*, Dkt. No. 12 at 13 ("On 4/28/15, me and my aunt went to the Cedar Hill Police Station to make a complaint against Officer Foley. They interviewed us in a room with cameras in it. They then took us in the hall and told us they would not be accepting out complaint. Jeanette lied to my aunt by telling her it was not a burglary. I have the video of that. No one attempted to arrest me on the warrant for my arrest that was issued 4/3/15.").

## B.     Second Amendment

Davis alleges that the defendants violated his "right to bear arms" protected by the Second Amendment because a firearm was confiscated from his vehicle during the January 2015 traffic stop and because firearms were taken after authorities executed a search warrant at his home. Dkt. No. 3 at 12; Dkt. No. 15 at 4-5.

"Like most rights, the right secured by the Second Amendment is not unlimited.... [That] right [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Dist of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

> It is not illegal, [for example], for a police officer to seize an arrestee's weapon if the officer is making a custodial arrest or reasonably believes that officer or public safety requires such a seizure. "So long as the requirements of the Fourth Amendment are met, police officers may ... confiscate guns that they believe have been used to commit a crime. Such

a search and seizure is a reasonable, necessary restriction on an individual's Second Amendment right to bear arms."

*Hunter v. City of Electra, Tex.*, No. 7:03-cv-153-R, 2006 WL 1814150, at *7 (N.D. Tex. June 29, 2006) (quoting *Dickerson v. City of Denton*, 298 F. Supp. 2d 537, 540 (E.D. Tex. 2004)); *accord Golden v. Austin Cty. Sheriff's Office*, Civ. A. No. H-09-817, 2010 WL 3909476, at *9 (S.D. Tex. Sept. 30, 2010); *see also United States v. Wooldridge*, No. 4:15-CR-18, 2016 WL 2892529, at *8 (E.D. Tex. May 17, 2016) ("While the right to bear arms is not absolute, police officers may only confiscate firearms during the search of a premises if, and when, Fourth Amendment requirements have been met." (citation omitted)).

Davis fails to state a claim under the Second Amendment related to confiscation of firearms by law enforcement. But those instances may form the basis of a plausible Fourth Amendment claim. *Cf. Schaefer v. Whitted*, 121 F. Supp. 3d 701, 711 (W.D. Tex. 2015) ("*Heller* and *McDonald[ v. City of Chicago*, 561 U.S. 742 (2010),] offer little guidance in this context where the circumstances pit an individual's Second Amendment rights to carry a weapon for self-defense at his or her residence against an officer's rights to safely conduct the investigation of a crime at such an individual's home. This delicate balance has been properly struck under the Fourth Amendment, which seeks to determine the objective reasonableness of a particular search or seizure. Absent authority to do so, the Court declines to transform an excessive force claim into a novel Second Amendment claim merely because the challenged conduct has been recast as an attempt to seize Schaeffer's weapon while he was physically on his

property. Accordingly, Plaintiff fails to state a claim under the Second Amendment." (citations omitted)).

### C.    Fourth Amendment

In his complaint, Davis alleges a Fourth Amendment claim against all the defendants "based upon violations of the rights to reject seizure or search without probable cause or search warrant." Dkt. No. 3 at 13. First, as set out above, documents that Davis includes in his verified questionnaire responses show that, as to him, search warrants were obtained. And affidavits in support of those warrants set out facts to support findings of probable cause. *See* Dkt. No. 12 at 16-29; Dkt. No. 13 at 35-50; Dkt. No. 14 at 1-18. One of those affidavits sets out facts to support that Officer Foley had reasonable suspicion to make the traffics stop on January 12, 2015. *See* Dkt. No. 12 at 21-22. And, particularly because Davis chose to amend his complaint with these materials, the Court need not credit conclusory allegations and legal conclusions made elsewhere that neither reasonable suspicion nor probable cause (nor even warrants) supported the defendants' actions. *Cf. Amazon Tours, Inc. v. Quest Global Angling Adventures, L.L.C.*, No. 3:03-cv-2551-M, 2004 WL 1788078, at *1 (N.D. Tex. June 30, 2004) ("When considering a motion to dismiss, the Court accepts as true all well-pled allegations in the Complaint and views them in the light most favorable to the plaintiff. However, conclusory allegations or legal conclusions set forth as factual allegations will not prevent dismissal." (citations omitted)); *see also Iqbal*, 556 U.S. at 679 ("[P]leadings that ... are no more than conclusions ... are not entitled to the assumption of truth. [And, w]hile legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations.").

But Davis further supports his Fourth Amendment claim by asserting – again, against all the defendants – that "[a] judge determined that the police had no probable cause as of 1.12.15 and anything subsequent to that date." Dkt. No. 15 at 6-7. This statement appears to be in reference to the November 11, 2015 suppression hearing before Judge Frizell in state court. *See* Dkt. No. 13 at 30. Davis offers no facts to explain the basis for Judge Frizell's order. Nor does he explain if – or, if so, how – that ruling relates to the subsequent search of his home.

Regardless, the plausibility of Davis's Section 1983-based Fourth Amendment claim turns on an implicit assertion that the reasonable-suspicion and/or probable-cause findings (now included in his factual allegations) were completely negated by the suppression order. *See* Dkt. No. 13 at 30 ("On November 11, 2015 a suppression hearing was conducted before this Court at which time evidence, to wit: testimony of Cedar Hill Police Department Officer N. Foley, badge # 229 was presented. All evidence which was obtained subsequent to the traffic stop was ruled inadmissible in a trial for this offense by Judge Frizell.").

To the extent that, by pleading the suppression ruling, Davis "requests that the Court exclude or disregard the lawfulness of the arrest and allow him to recover damages, ... this request equates to applying the exclusionary rule in a civil action when this rule has been restricted for use solely in criminal cases." *Lewis v. LoCicero*, Civ. A. No. 15-00129-BAJ-EWD, 2017 WL 5957098, at *1 (M.D. La. Dec. 1, 2017) (citing *United States v. Janis*, 428 U.S. 433, 447 (1976); *Wren v. Towe*, 130 F.3d 1154, 1158

(5th Cir. 1997); *Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.")); *see also De La Paz v. Coy*, 786 F.3d 367, 371 n.3 (5th Cir. 2015) ("[B]oth plaintiffs err in arguing that their arrests lacked probable cause where the answers to the agents' questions were 'fruit of the poisonous tree' of their traffic stops. No court has yet applied this criminal law doctrine to civil cases like immigration proceedings." (citing *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1051 (1984); *Townes*, 176 F.3d at 146)).

As another district court in this circuit recently observed, "[w]hile ... the Fifth Circuit has clearly held that the exclusionary rule does not apply in civil cases, it does not appear that the [Fifth Circuit] has ever directly addressed whether damages may be awarded for a lawful arrest resulting from an unlawful search." *Lewis*, 2017 WL 5957098, at *2. But that district court found "the ruling in *Townes* persuasive." *Id.* (citation omitted).

In *Townes*, the United States Court of Appeals for the Second Circuit, citing *Carey*, 435 U.S. at 258-59, first observed that

> [t]he goal of the [Supreme] Court's § 1983 jurisprudence has been to tailor liability to fit the interests protected by the particular constitutional right in question.... The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all.
>
> No Fourth Amendment value would be served if Townes, who illegally possessed firearms and narcotics, reaps the financial benefit he seeks. Townes has already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by

-16-

the suppression of evidence obtained in violation of the Fourth Amendment. That benefit to Townes is merely incidental to the purpose of suppression, which is to compel law enforcement compliance with the Fourth Amendment and thereby prevent the invasions of law-abiding citizens' privacy. Now Townes seeks damages to compensate him for his conviction and time served, on top of the benefit he enjoys as a result of the suppression. That remedy would vastly overdeter police officers and would result in a wealth transfer that "is peculiar, if not perverse."

*Townes*, 176 F.3d at 148 (citations and footnotes omitted); *see Hector v. Watt*, 253 F.3d 154, 157 (3d Cir. 2000) ("When we reflect on the interests protected by the Fourth Amendment, we believe that it follows that a plaintiff cannot recover the litigation expenses incurred because police officers discovered criminal conduct during an unconstitutional search." (relying on *Townes*)); *see also Heidelberg v. City of Erie Police Dep't*, C.A. No. 14-116, 2015 WL 1431058, at *5 (W.D. Pa. Mar. 27, 2015) ("[W]ith regard to Plaintiff's claims of false arrest and/or illegal search and seizure, the Third Circuit Court has held that damages may not be recovered for such claims if police officers discover evidence of criminal conduct during an unconstitutional search.... Such is the case here. Thus, Plaintiff's claims for false arrest and/or illegal search and seizure will also be dismissed against the individual E.P.D. Defendants." (relying on *Hector* and *Townes*)).

Because Davis interjects the suppression ruling – after which the Dallas County District Attorney dropped a criminal prosecution against Davis – as a basis to allege a Fourth Amendment violation and alleges no other non-conclusory facts in support of that claim nor seems to allege an independent claim for false arrest or malicious prosecution, the Fourth Amendment claim as currently stated lacks plausibility. Put

another way, for his Fourth Amendment claim to be plausible, Davis must provide facts to show how he was harmed other than by the criminal prosecution that was dismissed after the suppression hearing in state court. *See Silver*, 939 F. Supp. 2d at 22-23 (dismissing for failure to state a claim a Fourth Amendment claim under which the plaintiff sought compensation "not for the invasion of a protected privacy interest but for the 'stress, trouble, and pain' caused by his arrest following the [police] officers' discovery of illegal drugs during the search"); *Hampton v. Dist. of Columbia*, 764 F. Supp. 2d 147, 150 (D.D.C. 2011) ("[B]ecause the interest protected by the Fourth Amendment is a person's privacy interest, a plaintiff must show legal causation between the invasion of privacy and the actual injury suffered. There is no legally cognizable causal relationship, however, between an officer's search of a plaintiff's belongings and the arrest and detainment that may result from the fruits of that search." (citations omitted)); *cf. Corrigan v. Glover*, 254 F. Supp. 3d 184, 207 (D.D.C. 2017) ("To be sure, a cause of action for false arrest would allow a plaintiff to 'seek damages from the time of detention up until issuance of process or arraignment.' Similarly, a claim of malicious prosecution would permit damages for 'confinement imposed pursuant to legal process.' The plaintiff, however, never brought a claim for false arrest or malicious prosecution, claiming only unlawful search and seizure. Accordingly, he can be compensated only for those damages 'directly related to the invasion of his privacy.'" (citations and brackets omitted)).

### D.   Eighth Amendment

Davis alleges that his rights under the Eighth Amendment were violated by the

imposition of excessive fines and bails. *See* Dkt. No. 15 at 9. The fines and bails that

he alleges were unconstitutionally excessive appear to be the amounts that he paid to

be released from jail after his arrest. *See, e.g., id.* ("[I] had excessive fines and bail to

pay in order to get out of jail."). The Court should therefore consider this claim under

the Eighth Amendment's Excessive Bail Clause.

"The Eighth Amendment's prohibition against excessive bail is the foundation

of a bail system which, by conditioning release on the offer of financial security, seeks

to reconcile the defendant's interest in, and society's commitment to, pretrial liberty

with the need to assure the defendant's presence at trial." *Meechaicum v. Fountain*,

696 F.2d 790, 791 (10th Cir. 1983) (internal quotation marks and citation omitted).

> "[A] prohibition against excessive bail exists even though there is no
> absolute constitutional right to bail. In *Stack v. Boyle*, the [Supreme]
> Court held that "bail set at a figure higher than an amount reasonably
> calculated to ensure the defendant's presence at trial is 'excessive' under
> the Eighth Amendment." In applying this standard, [the Fifth Circuit
> has] found that requiring $750,000 bail from a defendant deemed to be a
> flight risk is not excessive even though the defendant is unable to pay the
> bail.

*Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003) (quoting *Stack v.*

*Boyle*, 342 U.S. 1, 5 (1951); citing *United States v. McConnell*, 842 F.2d 105, 107-08

(5th Cir. 1988)).

Assuming the prohibition on excessive bail applies to the states through the

Fourteenth Amendment, *see Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979);

*Broussard*, 318 F.3d at 650 n.25, Davis fails to specify the amount of bail imposed, or

"facts concerning the circumstances that might have warranted [the] amount of bail,"

or if "he was able to post [that amount], thereby gaining his pretrial release," *Been v. Edwards*, No. CIV-15-1258-F, 2015 WL 9263911, at *4 (W.D. Okla. Dec. 3, 2015). Davis therefore fails to show "that he was subjected to an unreasonable or arbitrary bail, and he has not alleged a plausible claim" under Section 1983 as to this alleged constitutional violation. *Id.* (dismissing a similarly deficient claim under Sections 1915A(b) and 1915(e)(2)(B)).

### E.    Fourteenth Amendment

In his complaint as filed, Davis bases his Fourteenth Amendment claim on the Equal Protection Clause. *See* Dkt. No. 3 at 13. Through his verified questionnaire responses, he reasserts an equal protection claim and further alleges that the defendants "violated [his] fourteenth amendment by not allowing [him] due process to a fair legal process." Dkt. No. 15 at 11-12.

Taking the equal protection claim first, the Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws," U.S. CONST. amend. XIV, § 1, which "is essentially a direction that all persons similarly situated should be treated alike," *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)); *see also Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) ("The Equal Protection Clause directs that persons similarly situated should be treated alike." (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982))).

To state an equal protection claim, a plaintiff typically alleges that he "received treatment different from that received by similarly situated individuals and that the

unequal treatment stemmed from a discriminatory intent." *Club Reno*, 568 F.3d at 212 (internal quotation marks omitted). But Davis fails to allege that he was treated differently from others similarly situated. *See id.* And no equal protection violation is alleged where a plaintiff "fails to allege any facts showing that [others were] similarly situated." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015) (citing *Club Retro*, 568 F.3d at 213); *see also Gibson v. Tex. Dep't of Ins. – Div. of Worker's Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (a viable claim under the Equal Protection Clause must include an allegation that plaintiff "has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment'" (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000))); *Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005) ("Woodard has made no showing that Andrus is selectively enforcing the state statute based upon any impermissible ground. She does not assert that Andrus is distinguishing between different groups. Therefore, Woodard has not stated an equal protection claim." (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996))).

Turning to the claimed due process violation, Davis alleges that Officer Woodall "was quick to put a warrant out for my arrest without a proper investigation" and that Officer Byrd "sent people around [Davis] that were [Byrd's] informants to try and befriend [Davis] and get [him] to do illegal things." Dkt. No. 15 at 11-12 (further alleging that another officer altered dash cam video in connection with the investigation/prosecution of Davis). These assertions, as well as others throughout the complaint as amended, seem to support a claim for malicious prosecution. But "causing

charges to be filed without probable cause [does] not without more violate the Constitution." *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (en banc).

> Accordingly, a freestanding § 1983 claim based solely on "malicious prosecution" is not cognizable. *Id.* at 942. The *Castellano* panel added, however, that "additional government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation." *Id.* at 953. Thus "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection – the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued." *Id.* To prevail, therefore, a § 1983 plaintiff must allege that officials violated specific constitutional rights in connection with a "malicious prosecution." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010); *see also Castellano*, 352 F.3d at 945 ("[W]e must insist on clarity in the identity of the constitutional violations asserted.").

*Harris v. Rivera*, No. 3:11-cv-3013-D, 2013 WL 246709, at *10 (N.D. Tex. Jan. 23, 2013).

Relatedly, another due process allegation against a separate officer appears to be based on the Fourth Amendment. *See* Dkt. No. 15 at 11 ("Foley decided to follow me and confiscate all my electronics to give to Detective Woodall so I would not be able to complete my complaint with Internal affairs."). A separate substantive due process claim based on this allegation cannot be alleged. *See, e.g.*, *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989))). And the Court's consideration of that allegation

under procedural due process likely would be same as considering it under the Fourth Amendment. *See Lowe v. Dallas Police Dep't*, No. 3:17-704-G-BN, 2017 WL 4863076, at *5 (N.D. Tex. Oct. 17, 2017) ("[W]hile *Graham* may not mean that a claim that Lowe's right to procedural due process is subsumed by the Fourth Amendment, practically speaking, it cannot be that the analysis differs as between a Fourth Amendment violation and a procedural due process violation based on the same seizure."), *rec. adopted*, 2017 WL 4838980 (N.D. Tex. Oct. 26, 2017).

For these reasons, Davis's vague and conclusory allegations concerning due process lack the clarity to support a stand-alone due process claim under the Fourteenth Amendment.

IV.   <u>Leave to Amend</u>

Davis has been afforded one opportunity to amend his claims through the screening questionnaire issued by the Court. *See Nixon*, 589 F. App'x at 279. But, considering the specific deficiencies identified above, the undersigned recommends that Davis be given one final opportunity to plead his "best case" by alleging his claims with the clarity and factual specificity required. *See Wiggins*, 710 F. App'x at 627.

## Recommendation

The Court should dismiss the complaint (as amended by the verified questionnaire responses) without prejudice to Plaintiff Jonathan Davis filing an amended complaint within a reasonable amount of time to be set by the Court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

-23-

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 9, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE