IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JONATHAN DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-278-M-BN |
| | § | |
| NICHOLAS FOLEY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jonathan Davis brought this *pro se* civil rights action under 42 U.S.C.
§ 1983 initially against the City of Cedar Hill, its police department, its police chief,
and individual police officers, alleging that the defendants violated his rights protected
by the First, Second, Fourth, Eighth, and Fourteenth Amendments. *See* Dkt. No. 3.
This action has been referred to the undersigned United States magistrate judge for
pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from
Chief Judge Barbara M. G. Lynn.

The Court granted Davis leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
6, and issued a screening questionnaire, *see* Dkt. No. 11, to which Davis submitted a
163-page verified response, *see* Dkt. Nos. 12, 13, 14, & 15. The Court, accepting the
undersigned's recommendation, then dismissed Davis's complaint as amended by his
verified questionnaire response without prejudice to his filing an amended complaint.
*See* Dkt. No. 19; *see also* Dkt. No. 18.

Davis's amended complaint, in which he reasserts his claims solely against a

single defendant – Nicholas Foley, a patrol officer with the Cedar Hill Police Department, in both his official and his individual capacity – is now before the Court. *See* Dkt. No. 20. And the undersigned enters these findings of fact, conclusions of law, and recommendation that, as the Court has afforded Davis two opportunities to amend his complaint, the Court should dismiss this case with prejudice because the amended complaint fails to state a claim on which relief may be granted.

## Applicable Background

Davis's claims against Officer Foley stem from an investigation into Davis and his arrest. *See generally* Dkt. No. 20. The factual allegations now before the Court have been repackaged – and to some extent pared down – from those presented in the initial complaint as amended by the verified questionnaire response, which the Court previously summarized. *See Davis v. Cedar Hill Police Dep't*, No. 3:17-cv-278-M-BN, 2018 WL 1633023, at *1-*2 (N.D. Tex. Mar. 9, 2018), *rec. accepted*, 2018 WL 1617858 (N.D. Tex. Apr. 4, 2018).

And the undersigned will incorporate those allegations as necessary to discuss each constitutional claim Davis brings against Officer Foley:

> 1. I, Johnathan Davis, claim that the Defendant, Nicholas Foley, violated my 1st amendment right to freedom of speech and press by confiscating my electronic devices from my personal property so I could not communicate with anyone about my medications.
> 2. I, Johnathan Davis, claim that the defendant, Nicholas Foley violated my 2nd amendment right to keep and bear arms. Defendant Foley removed my personal property from my person, against my will.
> 3. I, Johnathan Davis, claim that Defendant Nicholas Foley violated my 4th amendment right by unreasonably searching my personal property.
> 4. I, Johnathan Davis, claim that defendant Nicholas Foley violated my 8th amendment right by issuing fines to me that are unusual and cruel.

> 5. I , Johnathan Davis, claim that Defendant Nicholas Foley violated my 14th amendment right to liberty and property, without due process of the law and my rights under the Equal Protection Clause by detaining me and arresting me depriving me of liberty.

Dkt. No. 20 at 1.

But the claims as amended fail for substantially the same reasons that the Court explained in dismissing Davis's initial complaint.

## Legal Standards

A district court is required to screen a civil action filed IFP and may summarily dismiss that action if, for example, it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Dismissal for failure to state a claim "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam); emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. Indeed, to survive dismissal under the framework of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that he contends entitle him to relief. *Johnson*, 135 S. Ct. at 347 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief

is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)).

The rationale that factual plausibility (as opposed to legal labeling) controls the failure-to-state-a-claim analysis has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *see United States v. Ayika*, 554 F. App'x 302, 308 (5th Cir. 2014) (per curiam) (a court has a "duty to construe *pro se* [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney").

And, in conducting the failure-to-state-a-claim analysis, "it is clearly proper ... to take judicial notice of matters of public record," *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008).

## Analysis

### I.   Official Capacity

To the extent that Davis brings his claims against Officer Foley in his official capacity, "[a]n official-capacity lawsuit is 'only another way of pleading an action against an entity of which an officer is an agent.'" *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). When an individual is sued is his official capacity, liability is imposed "on the entity that he

represents provided, of course, the public entity received notice and an opportunity to respond." *Id.* (quoting *Brandon v. Holt*, 469 U.S. 464, 471-72, (1985)); *see also Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

"A suit against a city police department officer in his official capacity is a suit against the governmental entity for which the individual defendant is an agent, here [the City of Cedar Hill], if [Davis] does not demonstrate that the [Cedar Hill] Police Department received a grant of authority from [the City of Cedar Hill] to engage in separate litigation." *Parker v. Missouri City, Tex.*, Civ. A. No. H-12-2484, 2014 WL 7004061, at *10 (S.D. Tex. Dec. 10, 2014) (citing *Graham*, 473 U.S. at 165; *McHenry v. Stinnett Police Dep't*, No. 2:13-cv-228-J, 2014 WL 3939512, at *4 (N.D. Tex. Feb. 14, 2014)); *see also Morgan v. City of Waco*, No. 3:01-cv-2818-M, 2002 WL 1776935 (N.D. Tex. July 30, 2002) (determining that official capacity claims against Rockwall police officers were claims against the City of Rockwall); *cf. Combs v. City of Dallas*, 289 F. App'x 684, 686 (5th Cir. 2008) (per curiam) (affirming dismissal of "the [Dallas Police Department, or DPD,] as a defendant because it is a servient political department that does not enjoy a separate and distinct legal existence from the City of Dallas," as the plaintiff failed to "show that the City of Dallas granted the DPD the capacity to sue or be sued as a separate and distinct entity" (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991))).

It is established that "[a] municipality" – like the City of Cedar Hill – "and/or its

policymakers may be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted).

To assert liability under *Monell*, Davis must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see also id.* ("A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" (quoting *Piotrowski*, 237 F.3d at 578)).

Davis fails to directly allege that his rights were violated under an official policy of the City of Cedar Hill. But that does not end the analysis here where Davis also alleges that "Chief Rhodes sent a letter to me dated 3/3/15 that fully exonerated Officer Foley and John Brandon Woodall of any violation of the law or department policy." Dkt. No. 20 at 8. This allegation could be construed as asserting that the "the City is liable because Chief [Rhodes] ratified [Officer Foley's] conduct." *Peterson*, 588 F.3d at 849.

"[I]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). But the United

States Court of Appeals for the Fifth Circuit "has limited the theory of ratification to 'extreme factual situations,'" *id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)), such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back, *see id.* (citations omitted)). And the Fifth Circuit has "also explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Id.* (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)).

Given these standards and Davis's amended allegations, the Court should not find that Davis has sufficiently alleged municipal liability based on a theory of ratification. Therefore, Davis has not alleged a plausible claim against the City itself.

## II.    Individual Capacity/Constitutional Claims

An overall deficiency afflicts Davis's amended complaint. While Davis offers an overall narrative of what he claims occurred, *see* Dkt. No. 20 at 2-12, he fails to sufficiently identify the particular, non-conclusory facts in that narrative that support each alleged constitutional harm.

Factual specificity is required when pleading a case under Section 1983 because "the elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another." *Carey v. Piphus*, 435 U.S. 247, 264-65 (1978). "In other words, § 1983 liability does not turn on a one-shoe-fits-all proposition." *Silver v. D.C. Metro. Police Dep't*, 939 F. Supp. 2d 20, 22 (D.D.C. 2013).

### A.    First Amendment

Davis specifically alleges that Officer Foley violated his First Amendment "right to freedom of speech and press by confiscating [Davis's] electronic devices from [his] personal property so [Davis] could not communicate with anyone about [his] medications." Dkt. No. 20 at 1; *see id.* at 7 ("Detective Woodall sent Officer Foley to follow me and arrest me and take all my cellphones and throw me in jail, so I would not be able to file the complaint that next morning. I have the book in video that incriminates Officer Foley and implements Detective Woodall in this corrupted plot against me. Officer Foley falsely imprisoned me and deprived me of my medications while I was incarcerated because I wouldn't give him the codes to my phone. The police dash cam video and the police jail book in video proves all of this.").

A prisoner's "inability to make a phone call may implicate his First Amendment rights." *Fuller v. Squire*, No. 3:94-cv-2604-G, 1997 WL 86438, at *3 (N.D. Tex. Feb. 20, 1997) (citing *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), and finding no violation where "[t]he undisputed evidence shows that [the plaintiff] was not denied all phone access; rather, [the prison-counselor defendant] did not allow him to make a single, unmonitored phone call to another prison official, an action [the defendant] was authorized to take by federal prison regulations"); *see also Young v. Seling*, 72 F. App'x 657, 659 (9th Cir. 2003) (per curiam) (recognizing that, "[s]ince *Keenan*, [the United States Court of Appeals for the Ninth Circuit has] continued to recognize 'the existence of a First Amendment right to telephone access subject to reasonable security measures'" (citations omitted)).

-8-

Here, Davis is not alleging that he was denied all phone calls, just that his phone was confiscated from him when he was arrested and booked into the jail. These facts are not sufficient to allege a plausible First Amendment claim.

### B.   Second Amendment

Davis next alleges that Officer Foley violated the "right to bear arms" because he "removed [Davis's] personal property from [his] person, against [his] will." Dkt. No. 20 at 1. To the extent that Davis is alleging that Officer Foley confiscated a firearm from him, "[l]ike most rights, the right secured by the Second Amendment is not unlimited.... [That] right [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Dist of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

> It is not illegal, [for example], for a police officer to seize an arrestee's weapon if the officer is making a custodial arrest or reasonably believes that officer or public safety requires such a seizure. "So long as the requirements of the Fourth Amendment are met, police officers may ... confiscate guns that they believe have been used to commit a crime. Such a search and seizure is a reasonable, necessary restriction on an individual's Second Amendment right to bear arms."

*Hunter v. City of Electra, Tex.*, No. 7:03-cv-153-R, 2006 WL 1814150, at *7 (N.D. Tex. June 29, 2006) (quoting *Dickerson v. City of Denton*, 298 F. Supp. 2d 537, 540 (E.D. Tex. 2004)); *accord Golden v. Austin Cty. Sheriff's Office*, Civ. A. No. H-09-817, 2010 WL 3909476, at *9 (S.D. Tex. Sept. 30, 2010); *see also United States v. Wooldridge*, No. 4:15-CR-18, 2016 WL 2892529, at *8 (E.D. Tex. May 17, 2016) ("While the right to bear arms is not absolute, police officers may only confiscate firearms during the search of a premises if, and when, Fourth Amendment requirements have been met." (citation

omitted)).

Davis therefore fails to state a claim under the Second Amendment related to the confiscation of a firearm by law enforcement.

But such an instance, alleged with sufficient factual plausibility, may form the basis of a Fourth Amendment claim. *Cf. Schaefer v. Whitted*, 121 F. Supp. 3d 701, 711 (W.D. Tex. 2015) ("*Heller* and *McDonald[ v. City of Chicago*, 561 U.S. 742 (2010),] offer little guidance in this context where the circumstances pit an individual's Second Amendment rights to carry a weapon for self-defense at his or her residence against an officer's rights to safely conduct the investigation of a crime at such an individual's home. This delicate balance has been properly struck under the Fourth Amendment, which seeks to determine the objective reasonableness of a particular search or seizure. Absent authority to do so, the Court declines to transform an excessive force claim into a novel Second Amendment claim merely because the challenged conduct has been recast as an attempt to seize Schaeffer's weapon while he was physically on his property. Accordingly, Plaintiff fails to state a claim under the Second Amendment." (citations omitted)).

### C.    Fourth Amendment

In his amended complaint, Davis specifically alleges as the basis for his Fourth Amendment claim that Officer Foley "unreasonably searched [his] personal property." Dkt. No. 20 at 1; *see id.* at 9 ("According to the search warrant obtained to search my house, Officer Foley states that surveillance on my house began on April 16, 2015 because of an alleged drug investigation that they were conducting against me."); *id.*

at 9 ("The only way they could raid my home was to portray me as a drug dealer and charge me as a felon, then they would have somewhat probable cause to raid my house. There are many reasons why I was arrested between the time Officer Foley put a felony warrant out for my arrest and the time the SWAT team raided my house May 1, 2015.").

The existence of a search warrant(s) alluded to above is confirmed by documents that Davis included in his verified questionnaire response, which reflect that, as to him, search warrants were obtained. Affidavits in support of those warrants set out facts to support findings of probable cause. *See* Dkt. No. 12 at 16-29; Dkt. No. 13 at 35-50; Dkt. No. 14 at 1-18. And one of those affidavits sets out facts to support that Officer Foley had reasonable suspicion to make the traffics stop on January 12, 2015. *See* Dkt. No. 12 at 21-22.

While those documents are not part of the amended complaint now before the Court, it is proper to take notice of them now, not just because Davis has made them part of the record before the Court, but because "the court may take judicial notice of matters of public record," including material filed in a state court proceeding. *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012) (per curiam) (citing *Funk v. Stryker Corp.*, 631 F.3d 377 (5th Cir. 2011), and concluding, there, that "the document referenced is a pleading filed with a Louisiana state district court, and it is a matter of public record").

The Court need not therefore credit any conclusory factual allegations and legal conclusions made elsewhere that neither reasonable suspicion nor probable cause (nor

even warrants) supported Officer Foley's actions. *Cf. Amazon Tours, Inc. v. Quest Global Angling Adventures, L.L.C.*, No. 3:03-cv-2551-M, 2004 WL 1788078, at *1 (N.D. Tex. June 30, 2004) ("When considering a motion to dismiss, the Court accepts as true all well-pled allegations in the Complaint and views them in the light most favorable to the plaintiff. However, conclusory allegations or legal conclusions set forth as factual allegations will not prevent dismissal." (citations omitted)); *see also Iqbal*, 556 U.S. at 679 ("[P]leadings that ... are no more than conclusions ... are not entitled to the assumption of truth. [And, w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

But Davis further supports his Fourth Amendment claim by asserting that "[t]he judge granted [his] motion to suppress Officer Foley[']s statement and any other evidence." Dkt. No. 20 at 12. This assertions appears to be in reference to the November 11, 2015 suppression hearing before Judge Frizell in state court. *See* Dkt. No. 13 at 30. Davis offers no facts to explain the basis for Judge Frizell's order. Nor does he explain if – and, if so, how – that ruling relates to the subsequent search of his home.

Regardless, the plausibility of Davis's Section 1983-based Fourth Amendment claim turns on an implicit assertion that the reasonable-suspicion and/or probable-cause findings were completely negated by the suppression order. *See* Dkt. No. 13 at 30 ("On November 11, 2015 a suppression hearing was conducted before this Court at which time evidence, to wit: testimony of Cedar Hill Police Department Officer N. Foley, badge # 229 was presented. All evidence which was obtained subsequent to the

traffic stop was ruled inadmissible in a trial for this offense by Judge Frizell.").

And, to the extent that, by pleading the suppression ruling, Davis "requests that the Court exclude or disregard the lawfulness of the arrest and allow him to recover damages, ... this request equates to applying the exclusionary rule in a civil action when this rule has been restricted for use solely in criminal cases." *Lewis v. LoCicero*, Civ. A. No. 15-00129-BAJ-EWD, 2017 WL 5957098, at *1 (M.D. La. Dec. 1, 2017) (citing *United States v. Janis*, 428 U.S. 433, 447 (1976); *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997); *Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.")); *see also De La Paz v. Coy*, 786 F.3d 367, 371 n.3 (5th Cir. 2015) ("[B]oth plaintiffs err in arguing that their arrests lacked probable cause where the answers to the agents' questions were 'fruit of the poisonous tree' of their traffic stops. No court has yet applied this criminal law doctrine to civil cases like immigration proceedings." (citing *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1051 (1984); *Townes*, 176 F.3d at 146)).

As another district court in this circuit observed, "[w]hile ... the Fifth Circuit has clearly held that the exclusionary rule does not apply in civil cases, it does not appear that the [Fifth Circuit] has ever directly addressed whether damages may be awarded for a lawful arrest resulting from an unlawful search." *Lewis*, 2017 WL 5957098, at *2. But that district court found "the ruling in *Townes* persuasive." *Id.* (citation omitted).

In *Townes*, the United States Court of Appeals for the Second Circuit, citing

-13-

*Carey*, 435 U.S. at 258-59, first observed that

> [t]he goal of the [Supreme] Court's § 1983 jurisprudence has been to tailor liability to fit the interests protected by the particular constitutional right in question.... The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all.
>
> No Fourth Amendment value would be served if Townes, who illegally possessed firearms and narcotics, reaps the financial benefit he seeks. Townes has already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment. That benefit to Townes is merely incidental to the purpose of suppression, which is to compel law enforcement compliance with the Fourth Amendment and thereby prevent the invasions of law-abiding citizens' privacy. Now Townes seeks damages to compensate him for his conviction and time served, on top of the benefit he enjoys as a result of the suppression. That remedy would vastly overdeter police officers and would result in a wealth transfer that "is peculiar, if not perverse."

*Townes*, 176 F.3d at 148 (citations and footnotes omitted); *see Hector v. Watt*, 253 F.3d 154, 157 (3d Cir. 2000) ("When we reflect on the interests protected by the Fourth Amendment, we believe that it follows that a plaintiff cannot recover the litigation expenses incurred because police officers discovered criminal conduct during an unconstitutional search." (relying on *Townes*)); *see also Heidelberg v. City of Erie Police Dep't*, C.A. No. 14-116, 2015 WL 1431058, at *5 (W.D. Pa. Mar. 27, 2015) ("[W]ith regard to Plaintiff's claims of false arrest and/or illegal search and seizure, the Third Circuit Court has held that damages may not be recovered for such claims if police officers discover evidence of criminal conduct during an unconstitutional search.... Such is the case here. Thus, Plaintiff's claims for false arrest and/or illegal search and seizure will also be dismissed against the individual E.P.D. Defendants." (relying on *Hector* and *Townes*)).

-14-

Because Davis interjects the suppression ruling – after which the Dallas County District Attorney dropped a criminal prosecution against Davis – as a basis to allege a Fourth Amendment violation and alleges no other non-conclusory facts in support of that claim nor seems to allege an independent claim for false arrest or malicious prosecution, the Fourth Amendment claim lacks plausibility.

Put another way, for his Fourth Amendment claim to be plausible, Davis would have had to provide facts to show how he was harmed other than by the criminal prosecution that was dismissed after the suppression hearing in state court. *See Silver*, 939 F. Supp. 2d at 22-23 (dismissing for failure to state a claim a Fourth Amendment claim under which the plaintiff sought compensation "not for the invasion of a protected privacy interest but for the 'stress, trouble, and pain' caused by his arrest following the [police] officers' discovery of illegal drugs during the search"); *Hampton v. Dist. of Columbia*, 764 F. Supp. 2d 147, 150 (D.D.C. 2011) ("[B]ecause the interest protected by the Fourth Amendment is a person's privacy interest, a plaintiff must show legal causation between the invasion of privacy and the actual injury suffered. There is no legally cognizable causal relationship, however, between an officer's search of a plaintiff's belongings and the arrest and detainment that may result from the fruits of that search." (citations omitted)); *cf. Corrigan v. Glover*, 254 F. Supp. 3d 184, 207 (D.D.C. 2017) ("To be sure, a cause of action for false arrest would allow a plaintiff to 'seek damages from the time of detention up until issuance of process or arraignment.' Similarly, a claim of malicious prosecution would permit damages for 'confinement imposed pursuant to legal process.' The plaintiff, however, never brought

a claim for false arrest or malicious prosecution, claiming only unlawful search and seizure. Accordingly, he can be compensated only for those damages 'directly related to the invasion of his privacy.'" (citations and brackets omitted)). This he has not done.

### D.    Eighth Amendment

Davis alleges that Officer Foley violated his rights under the Eighth Amendment "by issuing fines to [him] that are unusual and cruel." Dkt. No. 20 at 1. The Court should therefore consider this claim under the Eighth Amendment's Excessive Bail Clause.

"The Eighth Amendment's prohibition against excessive bail is the foundation of a bail system which, by conditioning release on the offer of financial security, seeks to reconcile the defendant's interest in, and society's commitment to, pretrial liberty with the need to assure the defendant's presence at trial." *Meechaicum v. Fountain*, 696 F.2d 790, 791 (10th Cir. 1983) (internal quotation marks and citation omitted).

> "[A] prohibition against excessive bail exists even though there is no absolute constitutional right to bail. In *Stack v. Boyle*, the [Supreme] Court held that "bail set at a figure higher than an amount reasonably calculated to ensure the defendant's presence at trial is 'excessive' under the Eighth Amendment." In applying this standard, [the Fifth Circuit has] found that requiring $750,000 bail from a defendant deemed to be a flight risk is not excessive even though the defendant is unable to pay the bail.

*Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003) (quoting *Stack v. Boyle*, 342 U.S. 1, 5 (1951); citing *United States v. McConnell*, 842 F.2d 105, 107-08 (5th Cir. 1988)).

Assuming that the prohibition on excessive bail applies to the states through the

Fourteenth Amendment, *see Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Broussard*, 318 F.3d at 650 n.25, Davis fails to specify the amount of bail imposed, or "facts concerning the circumstances that might have warranted [the] amount of bail," or if "he was able to post [that amount], thereby gaining his pretrial release," *Been v. Edwards*, No. CIV-15-1258-F, 2015 WL 9263911, at *4 (W.D. Okla. Dec. 3, 2015). Davis therefore fails to show "that he was subjected to an unreasonable or arbitrary bail, and he has not alleged a plausible claim" under Section 1983 as to this alleged constitutional violation. *Id.* (dismissing a similarly deficient claim under Sections 1915A(b) and 1915(e)(2)(B)).

### E.    Fourteenth Amendment

Despite a stray reference to due process, Davis appears to base his Fourteenth Amendment claim on the Equal Protection Clause. *Compare* Dkt. No. 20 at 1 ("Defendant Nicholas Foley violated my 14th amendment right to liberty and property, without due process of the law and my rights under the Equal Protection Clause by detaining me and arresting me depriving me of liberty."), *with id.* at 13 ("I, the Plaintiff, assert my claims pursuant to 42 U.S.C. § against Nicholas Foley based upon violations of the Equal Protection Clause of the 14th Amendment."). But the Court should afford the amended complaint liberal construction and consider whether Davis has alleged a plausible claim under either clause.

Taking the equal protection claim first, the Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws," U.S. CONST. amend. XIV, § 1, which "is essentially a direction that all persons

similarly situated should be treated alike," *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)); *see also Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) ("The Equal Protection Clause directs that persons similarly situated should be treated alike." (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982))).

To state an equal protection claim, a plaintiff typically alleges that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Reno*, 568 F.3d at 212 (internal quotation marks omitted). But Davis fails to allege that he was treated differently from others similarly situated. *See id.* And no equal protection violation is alleged where a plaintiff "fails to allege any facts showing that [others were] similarly situated." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015) (citing *Club Retro*, 568 F.3d at 213); *see also Gibson v. Tex. Dep't of Ins. – Div. of Worker's Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (a viable claim under the Equal Protection Clause must include an allegation that plaintiff "has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment'" (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000))); *Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005) ("Woodard has made no showing that Andrus is selectively enforcing the state statute based upon any impermissible ground. She does not assert that Andrus is distinguishing between different groups. Therefore, Woodard has not stated an equal protection claim." (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996))).

Turning to the claimed due process violation, Davis's factual assertions seem to support a claim for malicious prosecution. But "causing charges to be filed without probable cause [does] not without more violate the Constitution." *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (en banc).

> Accordingly, a freestanding § 1983 claim based solely on "malicious prosecution" is not cognizable. *Id.* at 942. The *Castellano* panel added, however, that "additional government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation." *Id.* at 953. Thus "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection – the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued." *Id.* To prevail, therefore, a § 1983 plaintiff must allege that officials violated specific constitutional rights in connection with a "malicious prosecution." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010); *see also Castellano*, 352 F.3d at 945 ("[W]e must insist on clarity in the identity of the constitutional violations asserted.").

*Harris v. Rivera*, No. 3:11-cv-3013-D, 2013 WL 246709, at *10 (N.D. Tex. Jan. 23, 2013).

Relatedly, to the extent that Davis attempts to allege a due process violation based on the Fourth Amendment, a separate substantive due process claim cannot be alleged. *See, e.g.*, *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989))).

But the Court's consideration of his allegations under procedural due process

likely would be same as considering them under the Fourth Amendment. *See Lowe v. Dallas Police Dep't*, No. 3:17-704-G-BN, 2017 WL 4863076, at *5 (N.D. Tex. Oct. 17, 2017) ("[W]hile *Graham* may not mean that a claim that Lowe's right to procedural due process is subsumed by the Fourth Amendment, practically speaking, it cannot be that the analysis differs as between a Fourth Amendment violation and a procedural due process violation based on the same seizure."), *rec. adopted*, 2017 WL 4838980 (N.D. Tex. Oct. 26, 2017).

For these reasons, Davis's vague and conclusory allegations concerning due process lack the clarity to support a stand-alone due process claim under the Fourteenth Amendment.

## Recommendation

As the Court has afforded Davis two opportunities to amend his complaint – once through his verified questionnaire responses and again after the dismissal of the initial complaint – the Court should dismiss this case with prejudice because the amended complaint fails to state a claim on which relief may be granted.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 12, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE